IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:20-CR-00136-M
Case No. 7:24-CV-00044-M

JOSHUA AUSTIN KRAMER,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

ORDER[1]

This matter comes before the court on the United States' Motion to Dismiss [DE 93] Petitioner's Section 2255 Petition to vacate, set aside, or correct his sentence (the "Petition") [DE 85]. The court finds that the Petition, the United States' Motion, and the record in this case conclusively show that Petitioner is entitled to no relief; therefore, no hearing is necessary pursuant to 28 U.S.C. § 2255(b). For the reasons that follow, the United States' Motion to Dismiss is granted and the Petition is denied.

I. **Background and Procedural History**

Petitioner was charged in an Indictment with (1) conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, (2) possession with intent to distribute 50 grams or more of methamphetamine, (3) possession of a firearm in furtherance of a drug trafficking crime (where such firearm was discharged), (4) possession of a firearm as a felon, and (5) two counts of distribution of 5 grams or more of methamphetamine. DE 20 at 1-3 (Superseding

---

[1] Although this order references the contents of several documents that remain under seal on Petitioner's docket, the order will not be entered under seal because the pertinent details from those sealed documents have since been discussed in other public filings and in the Fourth Circuit's unpublished opinion after Petitioner's direct appeal.

1

Indictment). The charges stem from a series of events that commenced in late 2019, when law enforcement responded to a report of a person shot at a residence in Jacksonville, North Carolina. DE 56 at 4. There, they encountered Petitioner, who had sustained multiple gunshot wounds. *Id.* Law enforcement found a 9mm firearm and multiple 9mm shell casings in the grass near Petitioner, and a large quantity of methamphetamine (as well as paraphernalia, 9mm magazines, and U.S. currency) in his vehicle. *Id.*

In early 2020, further incriminating information was derived from several cooperating individuals and subsequent controlled transactions with Petitioner. For example, one cooperating defendant informed law enforcement that he/she had purchased 1 ounce of methamphetamine from Petitioner on three separate occasions, and thereafter engaged in a controlled purchase of 39.52 grams of crystal methamphetamine from Petitioner. *Id.* A second cooperating defendant informed law enforcement that he/she had purchased approximately 31 ounces of Ice from Petitioner over the course of two months. *Id.* A third cooperating defendant told law enforcement that he/she had witnessed Petitioner purchase at least 36 ounces of methamphetamine from a supplier in Goldsboro, North Carolina over a period of three months. *Id.* And law enforcement conducted an additional controlled purchase, during which a confidential informant procured 25.53 grams of Ice from Petitioner. *Id.* When later confronted by law enforcement, Petitioner attempted to flee, but he was apprehended after a vehicle chase. *Id.* at 5.

Several months after his arrest, Petitioner entered into a written plea agreement, wherein he agreed to plead guilty to Counts 1 (conspiracy) and 5 (distribution) of the Superseding Indictment. DE 33. In that agreement, the parties stipulated that Petitioner was responsible for at least 10,000 kilograms but less than 30,000 kilograms of converted drug weight. *Id.* at 9. Petitioner also waived his right to contest his conviction or sentence in any postconviction

2

proceeding, except upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to him at the time of his guilty plea. *Id.* at 1.

Petitioner entered his guilty plea in early 2021. DE 32 (Minute Entry). At that hearing, Petitioner stated under oath that he had an adequate opportunity to discuss the superseding indictment with his attorney (Mr. Damon Chetson), that he was fully satisfied with his attorney's services, and that he understood fully the plea agreement's terms, including the appellate waiver and the stipulation regarding drug weight. *See generally* DE 43 (Arraignment Transcript). Petitioner also averred that no one had attempted to force him to plead guilty "in any way." *Id.* at 15. This court accepted Petitioner's guilty plea. *See id.* at 25-26.

Several weeks after entering his guilty plea, Petitioner tried to reverse course. DE 35. He asserted in a letter to the court that he "was forced into accepting a plea" and was not guilty of the conspiracy charge. *Id.* at 1. Those assertions prompted Mr. Chetson to withdraw from the case, and new counsel was appointed for Petitioner (Mr. H.P. Williams, Jr.). DE 36; DE 37; DE 38.

Petitioner then filed a motion to withdraw his guilty plea. DE 47. Petitioner acknowledged his guilt for the methamphetamine distribution charge, but maintained his innocence as to the conspiracy charge, contending that he was merely engaged in a buyer-seller relationship with various individuals. *Id.* at 1-4. He also asserted that there was an insufficient factual basis for the drug weight stipulation in the plea agreement and reiterated his claim that he was pressured into accepting the agreement by Mr. Chetson. *See id.*

This court denied Petitioner's motion. DE 58. Citing Petitioner's sworn colloquy with the court during his arraignment, the court found that Petitioner had failed to offer credible evidence that he did not knowingly and voluntarily plead guilty. *Id.* at 2-3. The court also rejected Petitioner's claim of innocence on the conspiracy charge, observing that "[e]vidence of a buy-sell

3

transaction coupled with a substantial quantity of drugs would support a reasonable inference" of a conspiracy. *Id.* at 5 (citing *United States v. Reid*, 523 F.3d 310, 317 (4th Cir. 2008)). The court additionally concluded that the drug weight stipulation was irrelevant to the nature of Petitioner's guilty plea, and not binding on the court in any event. *Id.* at 4 n.2.

The matter proceeded to sentencing. Prior to the sentencing hearing, Petitioner raised an objection to the drug weight summarized in the Presentence Report (PSR) on the basis that the third cooperating defendant was not credible. DE 45 at 1-2. But at the sentencing hearing, Petitioner withdrew that objection. DE 72 at 5. At sentencing, the court observed that, whether it utilized the drug weight stipulation in the plea agreement or calculated the transactions reflected in Petitioner's PSR, it would arrive at the same base offense level of 34, and total offense level of 35. *Id.* at 6-7.[2] Petitioner fell into criminal history category VI, meaning he was subject to an advisory guideline range of 292-365 months. DE 56 at 12. The court ultimately varied downward and sentenced Petitioner to 260 months in custody. DE 72 at 29-30; DE 63 at 3.

Petitioner timely appealed. DE 66. "On appeal, [he] challenge[d] the denial of his motion to withdraw his guilty plea." *United States v. Kramer*, No. 21-4424, 2022 WL 2987964, at *1 (4th Cir. July 28, 2022). The Fourth Circuit affirmed this court, concluding that Petitioner (1) "failed to provide evidence to rebut the strong presumption that his sworn statements" at his arraignment "should be considered binding," (2) "present[ed] no evidence of his innocence," because "[t]he factual basis" offered at Petitioner's arraignment "established a conspiracy," (3) "present[ed] no evidence that the drug quantities" to which he "admitted" at his arraignment "were incorrect," and "failed to credibly show that" Mr. Chetson "was incompetent." *Id.* at *2.

---

[2] Notwithstanding Petitioner's attempt to withdraw his guilty plea, the court declined to find him in breach of his plea agreement and still awarded Petitioner a three-point reduction to his offense level for acceptance of responsibility. *Id.* at 9.

4

Petitioner now requests that the court vacate his conviction for the conspiracy charge and vacate or otherwise correct his sentence on the distribution charge. DE 85 at 13. The Petition raises three arguments. First, Petitioner asserts that Mr. Chetson rendered ineffective assistance of counsel by "fail[ing] to challenge the conspiracy charge," because a "reasonable attorney would have filed a motion to dismiss this charge, which likely would have resulted in the charge being dismissed." *Id.* at 5.[3] Second, Petitioner contends that Mr. Williams was ineffective because he did not "challenge . . . the calculation of [] drug weight" attributable to Petitioner, which he believes "was incorrect and resulted in a higher Offense level, which very likely resulted in a longer sentence" than he "would have otherwise received." *Id.* Third, Petitioner argues that the United States violated his due process rights "by convicting [him] of a crime" for which he "was innocent," in that Petitioner "did not conpsire [sic] with anyone to engage in the distribution of a controlled substance" and only "sold controlled substances to purchasers." *Id.* at 6.

The United States moved to dismiss the Petition on various grounds. DE 93. Petitioner responded, DE 99, and this matter is ready for decision.

## II. Governing Law

"Congress requires every federal prisoner who collaterally attacks his conviction to employ the motion mechanism provided in 28 U.S.C. § 2255." *Farkas v. Butner*, 972 F.3d 548, 550 (4th Cir. 2020). That motion mechanism provides that a federal prisoner who claims "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the

---

[3] Although the Petition refers only to Petitioner's "attorney," and does not mention anyone by name, the court can only infer that this specific argument pertains to Mr. Chetson, because Mr. Williams took over Petitioner's defense *after* Petitioner had pleaded guilty to the conspiracy charge, and *did* challenge the conspiracy charge within the context of Petitioner's motion to withdraw his guilty plea. Petitioner's reply brief makes clear this claim relates to Mr. Chetson. *See* DE 99 at 2-3.

5

sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "Section 2255 is an outgrowth of the historic habeas corpus powers of the federal courts as applied to the special case of federal prisoners." *Jones v. Hendrix*, 599 U.S. 465, 472 (2023); *see also Rasul v. Bush*, 542 U.S. 466, 473 (2004) (describing habeas corpus as "a writ antecedent to statute" which "throw[s] its root deep into the genius of our common law"). If a prisoner demonstrates infirmity in his conviction or sentence, the district "court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010) (quoting 28 U.S.C. § 2255(b)).

"The Government may respond to a Section 2255 petition by filing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Harmon v. United States*, No. 5:21-CR-00198, 2024 WL 2027537, at *1 (E.D.N.C. May 7, 2024). If the Government does so, the court "must evaluate" the motion to dismiss and "the petition under the standards governing motions to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure," meaning that the court is "obliged to accept a petitioner's well-pleaded allegations as true" and "draw all reasonable inferences therefrom in the petitioner's favor." *United States v. Paylor*, 88 F.4th 553, 565 (4th Cir. 2023). With that said, the scope of a court's review for a motion to dismiss a habeas petition is broader than the typical civil context because the court may also consider the record from the petitioner's underlying conviction. *McCollough v. Bragg*, No. 5:20-CV-138, 2021 WL 236079, at *3 (D.S.C. Jan. 25, 2021); 28 U.S.C. § 2255(b) (instructing court to review "the files and records of the case").

6

### III.     Analysis

####    a.   Ineffective Assistance of Counsel: Conspiracy Charge

"The Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (per curiam) (internal quotation marks omitted). To state a claim for ineffective assistance of counsel, a petitioner must plausibly allege (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness," and the reviewing court "must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks omitted); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential"). And to establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "This outcome-determinative standard" means that "[i]t is not enough for the defendant to show that the errors" merely "had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

"[W]hether to hold a hearing" on a Section 2255 petition is "ordinarily is a matter of district court discretion." *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021). But when a petition raises a claim for ineffective assistance of counsel, "a hearing is required" if the "movant presents

7

a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim." *United States v. McNeil*, 126 F.4th 935, 943 (4th Cir. 2025). On the other hand, no hearing is required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

Petitioner contends that Mr. Chetson rendered ineffective assistance of counsel because he "failed to challenge the conspiracy charge" and should "have filed a motion to dismiss the charge," which "likely would have" been successful. DE 85 at 5. In his reply brief, Petitioner expands on this theory by asserting that "[t]he evidence in [his] case" only "shows proof of a buyer-seller relationship" but "not a conspiracy." DE 99 at 2. This claim is meritless (and does not entitle Petitioner to a hearing) for several reasons.

First, this claim is barred because Petitioner admitted, under oath, that he was guilty of the conspiracy charge. *See* DE 43 at 21-22 (Arraignment Transcript). "It is well-established that a voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations." *Fields v. Att'y Gen. of State of Md.*, 956 F.2d 1290, 1294 (4th Cir. 1992). In other words, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). By contending that his former counsel performed deficiently by failing to file a motion to dismiss the conspiracy charge, Petitioner does precisely what *Tollett* and its progeny prohibit; Petitioner, after pleading guilty, "has no non-jurisdictional ground upon which to attack that judgment except the inadequacy of the plea." *United States v. Bundy*, 392 F.3d 641, 644–45 (4th Cir. 2004); *see also Tollett*, 411 U.S.

8

at 267 (holding that petitioner who has pleaded guilty "may only attack the voluntary and intelligent character of the guilty plea").

Petitioner attempted to attack his guilty plea previously, *see* DE 47, and was unsuccessful, *see Kramer*, 2022 WL 2987964 at *1-3. "A guilty plea is normally understood as a lid on the box, whatever is in it, not a platform from which to explore further possibilities." *United States v. Bluso*, 519 F.2d 473, 474 (4th Cir. 1975). Petitioner, after admitting his guilt in open court, is barred from relitigating his conspiracy conviction through an ineffective assistance of counsel claim.

Petitioner's claim also fails because the assertion that Mr. Chetson failed to subject the prosecution's case to meaningful adversarial testing is betrayed by Petitioner's sworn statements under oath that he had all the conversations he needed with his counsel and that he was fully satisfied with his services. DE 43 at 5. "Because sworn statements made by a pleading defendant during a Rule 11 colloquy carry a strong presumption of verity, and require the dismissal of any § 2255 motion relying on contrary allegations absent extraordinary circumstances," a "petitioner's statements that" he "was satisfied" with his attorney's "performance preclude consideration of any ineffective-assistance claim the grounds for which were apparent to petitioner at the time" he entered his plea. *Gao v. United States*, 375 F. Supp. 2d 456, 464 (E.D. Va. 2005) (internal quotation marks omitted) (citing *United States v. Lemaster*, 403 F.3d 216, 221-222 (4th Cir. 2005)).

When Petitioner entered his guilty plea to the conspiracy charge, it would have been "apparent" that Mr. Chetson would not be filing a motion to dismiss that charge. *Id.* And yet, Petitioner stated that he was fully satisfied with his attorney's services. DE 43 at 5. That statement "preclude[s]" him from now adopting the contrary position. *Gao*, 375 F. Supp. 2d at 464. Or

9

phrased another way, Petitioner may not "controvert his Rule 11 statements in a subsequent § 2255 motion unless he offers a valid reason why he should be permitted to depart from the apparent truth of his earlier statement." *Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975). Petitioner offers no reason, valid or otherwise, here.

Third, Petitioner's claim is barred by the appellate waiver in his plea agreement. As noted previously, through that provision Petitioner waived his right to contest his conspiracy conviction in any postconviction proceeding, except upon grounds of ineffective assistance of counsel *not known to him* at the time of his guilty plea. DE 33 at 1. At the arraignment, the court specifically discussed that provision with Petitioner, who stated that he understood the "rights" he was "waiving." DE 43 at 13. And again, when Petitioner pleaded guilty to the conspiracy charge at his arraignment, he must have known that Mr. Chetson would not be filing a motion to dismiss that charge. Otherwise, Petitioner would not have acknowledged his guilt as to that charge. Thus, the grounds of ineffective assistance of counsel raised by Petitioner now were known to him at the time of his guilty plea and are barred by his plea agreement. *See United States v. Blick*, 408 F.3d 162, 169 (4th Cir. 2005).

Last, even if Petitioner's claim of ineffective assistance of counsel against Mr. Chetson was not barred, it still fails on the merits because "the files and records of the case conclusively show that" Petitioner was guilty of a conspiracy. 28 U.S.C. § 2255(b). On this point, the Fourth Circuit has already addressed Petitioner's argument that "he had a mere buyer-seller relationship with his customers." *Kramer*, 2022 WL 2987964, at *2. After reviewing "[t]he factual basis to which [Petitioner] admitted during the Rule 11 hearing," the Fourth Circuit determined that the evidence "established a conspiracy between [Petitioner] and his customers." *Id.* That determination operates as law of the case and binds this court. *See TFWS, Inc. v. Franchot*, 572

F.3d 186, 191 (4th Cir. 2009) (explaining that, with limited exceptions not relevant here, "once the decision of an appellate court establishes the law of the case, it must be followed in all subsequent proceedings in the same case in the trial court") (internal quotation mark omitted). By the same token, Petitioner "may not circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion." *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009).

Even without the Fourth Circuit's prior holding on the issue of Petitioner's conspiracy conviction, the court would independently conclude that the record evidence in the case (controlled purchases involving significant quantities of methamphetamine and statements from cooperating sources indicating a history of significant narcotics transactions with Petitioner) establishes Petitioner's guilt. *See, e.g.*, *United States v. Reid*, 523 F.3d 310, 317 (4th Cir. 2008); *United States v. Burgos*, 94 F.3d 849, 858–59 (4th Cir. 1996); *United States v. Mills*, 995 F.2d 480, 485 n.1 (4th Cir. 1993).[4] Thus, Mr. Chetson did not render ineffective assistance of counsel because a motion to dismiss the conspiracy charge would have failed, and "[c]ounsel is not required to engage in the filing of futile motions." *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984); *see also Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005) (holding that counsel is not ineffective for failing to file motion that did not have "a realistic chance of being granted").

For all these reasons, Petitioner has failed to state a claim for ineffective assistance of counsel against Mr. Chetson.

b. Ineffective Assistance of Counsel: Drug Weight

Petitioner next argues that Mr. Williams was incompetent because he failed to "challenge . . . the calculation of [] drug weight," which Petitioner believes "was incorrect and resulted in a

---

[4] Because Petitioner has failed to identify any "disputed facts beyond the record," and no "credibility determination is necessary to resolve the claim," a hearing is not required. *McNeil*, 126 F.4th at 943. To the contrary, "the files and records of the case conclusively show that [Petitioner] is entitled to no relief." 28 U.S.C. § 2255(b).

11

higher Offense level, which very likely resulted in a longer sentence" than he "would have otherwise received." DE 85 at 5. Relevant here, in the plea agreement the parties stipulated that Petitioner was responsible for at least 10,000 kilograms but less than 30,000 kilograms of converted drug weight. DE 33 at 9. Before sentencing, Petitioner (through counsel) did object to the drug weight attributable to him. DE 45 at 1-2. But at sentencing, counsel withdrew that objection. DE 72 at 5.

Petitioner's argument as to Mr. Williams likewise fails for several independent reasons. First and foremost, Petitioner "presents no facts to support his claim that the drug quantity was incorrectly calculated. Thus, he fails to demonstrate that his counsel was ineffective in not" persisting in the objection to the drug weight. *Sloan v. United States*, No. 13-CR-08198, 2020 WL 6828690, at *8 (D. Ariz. Oct. 20, 2020), *recommendation adopted*, No. 13-CR-08198, 2020 WL 6827764 (D. Ariz. Nov. 20, 2020). As detailed previously, the court treats a motion to dismiss a habeas petition "under the standards governing motions to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Paylor*, 88 F.4th at 565. A familiar standard from that context is that "bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Just as with his direct appeal, Petitioner here "presents no evidence that the drug quantities" to which he "admitted" when he pleaded guilty "were incorrect." *Kramer*, 2022 WL 2987964, at *2. A claim in a habeas petition must be "supported by facts and argument." *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Petitioner's bare assertion that the drug weight attributed to him was inaccurate, without more, fails to state a claim for ineffective assistance of counsel. *See United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (explaining that "vague and

12

conclusory allegations contained in a § 2255 petition may be disposed of without further investigation").

Second, and just as fundamentally, Petitioner stipulated to the drug weight in his plea agreement. DE 33 at 9. "Counsel cannot be deemed ineffective for failing to object to facts contained in the PSR to which Petitioner stipulated as part of his free and voluntary guilty plea." *Cervantes-Sanchez v. United States*, No. 5:18-CR-48-5, 2020 WL 2556955, at *6 (W.D.N.C. May 20, 2020). Where, as here, Petitioner "agreed to the drug weight in his plea agreement," Mr. Williams was not "ineffective for failing to object to" that same "drug weight." *Patrick Direece Holiday v. United States*, No. 4:17-CR-46-5, 2021 WL 1680205, at *2 (E.D.N.C. Apr. 2, 2021), *recommendation adopted sub nom. Holiday v. United States*, No. 4:17-CR-46-5, 2021 WL 1669029 (E.D.N.C. Apr. 28, 2021).

"Plea agreements, as any contract, bind one party to do something the other party desires in exchange for some benefit." *United States v. Edgell*, 914 F.3d 281, 289 (4th Cir. 2019). Here, Petitioner agreed (among other items) to plead guilty to two charges, and stipulated to his responsibility for a certain quantity of drug weight. DE 33 at 1, 9. In return, the Government agreed to dismiss four other charges against him, including one which carried a mandatory 10-year sentence that would have been imposed consecutively to any other sentence. *Id.* at 8. Permitting Petitioner to revisit his drug weight stipulation through the prism of an ineffective assistance of counsel claim "would sanction an end run around" the stipulation in the plea agreement and "frustrate the bargain he made with the government." *United States v. Lubkin*, 122 F.4th 522, 529-30 (4th Cir. 2024), *cert. denied*, No. 24-6719, 2025 WL 1020412 (U.S. Apr. 7, 2025).

"Unlike a defendant who is sentenced after trial, a defendant who enters a plea bargain has some control over the terms of his sentence." *United States v. Bolinger*, 940 F.2d 478, 480 n.1

13

(9th Cir. 1991). If Petitioner did not want to stipulate to a particular drug weight, he could have "refuse[d]" to do so "as a condition of the plea." *Id.* But he knowingly and voluntarily entered into his plea agreement, with all of its attendant conditions and stipulations. DE 43; *Kramer*, 2022 WL 2987964, at *1-3. Petitioner may not now "renege on his deal," and challenge the drug weight to which he stipulated. *United States v. Worthen*, 842 F.3d 552, 555 (7th Cir. 2016). Concluding otherwise "would eliminate the chief virtues of the plea system[:] speed, economy, and finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). "Bargains are something that both sides must keep." *Lubkin*, 122 F.4th at 531.

The court further finds that Petitioner's argument fails on separate grounds because, if Mr. Williams had persisted in asserting the objection to the drug weight, Petitioner very likely would have been subject to a *higher*, not lower, offense level. This finding entails two components. First, recall that Petitioner originally objected to the drug weight on the basis that the third cooperating defendant was not credible. DE 45 at 1-2. But even if the court had completely excluded the drug weight attributable to that cooperating defendant's statements, Petitioner still would have been subject to a base offense level of 34.

Notably, the second cooperating defendant (whose veracity Petitioner has never challenged) informed law enforcement that he/she had purchased approximately 31 ounces of Ice from Petitioner over the course of two months. DE 56 at 4. In an effort to avoid potential double-counting, that weight was not used to calculate Petitioner's total drug weight in the PSR because the timeframe for those transactions overlapped with those described by third cooperating defendant. *Id.*; *see also id.* at 16. But if the court excluded the drug weight from the third cooperating defendant's statements, there would be no issue with double-counting, and the 31 ounces of Ice described by the second cooperating defendant would be used to calculate

Petitioner's drug weight. And 31 ounces of Ice, by itself, exceeds 10,000 kilograms of converted drug weight and produces a base offense level of 34. *See* U.S.S.G. §2D1.1 (Drug Quantity Table). Therefore, Petitioner would not have received any benefit by continuing to press his objection about the reliability of the third cooperating defendant.

Moreover, if Mr. Williams had persisted in the objection, Petitioner likely would have forfeited a three-point reduction to his total offense level due to non-acceptance of responsibility. At sentencing, the Government asked the court to find Petitioner in breach of the plea agreement (because he had stipulated to a drug weight, and then objected to that drug weight). DE 72 at 8-9; *see also* DE 54. If Petitioner were in breach of his plea agreement, the Government would no longer be bound by its stipulation that Petitioner receive a three-point reduction to his total offense level for acceptance of responsibility. *See* DE 33 at 10. The court recognized that it was "a close case," but declined to find Petitioner in breach of the plea agreement "based on his withdrawal" of the drug weight objection at sentencing. DE 72 at 9.

Thus, if Petitioner had not withdrawn his objection, not only would he still have been subject to a base offense level of 34 (based on the information in the PSR from the second cooperating defendant), but he would have been in breach of his plea agreement and likely lost the three-point reduction for acceptance of responsibility. In that case, Petitioner would have been subject to a total offense level of 38 (instead of 35) and a sentencing guidelines range of 360 months – life. *See* DE 56 at 12. Accordingly, the court finds that Mr. Williams' "failure to" persist in "a baseless objection is not ineffective assistance of counsel." *Joyner v. United States*, No. 4:11-CR-78, 2015 WL 1808942, at *4 (E.D.N.C. Apr. 20, 2015). Quite the opposite: his decision to withdraw that objection likely reduced Petitioner's sentencing exposure by a period of years. Counsel's "strategic decision not to challenge the drug weight," which would have "place[d

15

Petitioner's] acceptance of responsibility in jeopardy[,] appears to be the wisest course of action, and [Petitioner] offers no evidence or argument to the contrary." *United States v. Thomas*, No. 4:19-CR-80, 2024 WL 4205593, at *5 (E.D. Va. Sept. 16, 2024); *see also Grady v. United States*, No. 7:12-CR-127, 2015 WL 7573213, at *3 (E.D.N.C. Nov. 25, 2015) (holding that "[c]ounsel's tactical decision to withdraw the drug-weight objection" and instead focus on arguing about defendant's mitigating circumstances "was not objectively unreasonable").

Last, even if Petitioner's argument about the drug weight were accurate, the court announced at sentencing that if it "miscalculated the advisory guideline range in any way," it would have "impose[d] the same sentence as an alternative variant sentence in light of all the section 3553(a) factors." DE 72 at 35-36. In other words, any error regarding the drug weight attributable to Petitioner was harmless. *United States v. Gomez-Jimenez*, 750 F.3d 370, 382–83 (4th Cir. 2014). As a consequence, Petitioner cannot "show[] prejudice" under *Strickland* "because he has failed to establish any reasonable probability that his sentence would have been lower if his attorney had challenged the drug weight." *Thomas*, 2024 WL 4205593, at *5.

For the foregoing reasons, Petitioner has failed to state a claim for ineffective assistance of counsel against Mr. Williams.

c. Due Process

Petitioner's final claim asserts that the "Government violated the Due Process clause of the Fifth Amendment by convicting" him "of a crime" for which he "was innocent," in that Petitioner "did not conpsire [sic] with anyone to engage in the distribution of a controlled substance" and only "sold controlled substances to purchasers." DE 85 at 6. This claim may be dealt with in short order because it mirrors an argument that Petitioner presented on direct appeal: that he was "legally innocent of the conspiracy charge because he had a mere buyer-seller relationship with his

16

customers." *Kramer*, 2022 WL 2987964, at *2. The Fourth Circuit rejected that argument, concluding that "[t]he factual basis to which [Petitioner] admitted during the Rule 11 hearing established a conspiracy between [him] and his customers." *Id.*

Petitioner "may not circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion." *Linder*, 552 F.3d at 396. His argument that he was innocent of the conspiracy charge was "already addressed and rejected on direct appeal." *United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004). Petitioner may not now "recast" that same theory "under the guise of collateral attack." *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). And "Petitioner has pointed to no circumstances that would warrant reconsideration of that issue," *Barnett v. United States*, No. 3:12-CR-188-2, 2020 WL 3128593, at *15 (W.D.N.C. June 12, 2020), such as an "intervening change in controlling law," *Schaefer v. United States*, No. 4:05-CR-01133-1, 2015 WL 1549148, at *5 (D.S.C. Apr. 8, 2015). Simply put, Petitioner is "procedurally barred . . . "from relitigating th[is] claim." *United States v. Caro*, 733 F. App'x 651, 659 (4th Cir. 2018).

## IV. Conclusion

Petitioner has failed to state a claim upon which habeas relief may be granted. Accordingly, the court GRANTS the United States' Motion to Dismiss [DE 93] and DENIES Petitioner's Section 2255 Petition [DE 85]. The court further finds that reasonable jurists would not find the court's treatment of any of Petitioner's claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further. *See Buck v. Davis*, 580 U.S. 100, 122 (2017); *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

17

The court therefore denies a certificate of appealability.

SO ORDERED this 19th day of June, 2025.

*Richard E. Myers II*
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE